UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD L. DOWNING,

                              Plaintiff,

v.                                                          5:24-CV-0643
                                                            (GTS/ML)
TOWN OF CICERO NY; THE TOWN OF
CICERO NY POLICE DEPT.; and POLICE
OFFICER KYLE HARRINGTON, Cicero
Police Dept.,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

EDWARD L. DOWNING
  Plaintiff, *Pro Se*
553 Shacksbush Road
Bernhards Bay, NY 13028

SUGARMAN LAW FIRM LLP                                 PAUL V. MULLIN, ESQ.
  Counsel for Defendants
211 West Jefferson Street
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Edward L. Downing

("Plaintiff") against the Town of Cicero, the Town of Cicero Police Department, and Officer

Kyle Harrington ("Defendants"), is the Defendants' motion to dismiss Plaintiff's Complaint for

failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 14.)  For the reasons set

forth below, Defendants' motion is granted in part and denied in part.

## I.     RELEVANT BACKGROUND

A.      **Plaintiff's Complaint**

Generally, in his Complaint, Plaintiff asserts four claims: (1) a claim of malicious prosecution based on Defendant Harrington's filing of a criminal information against Plaintiff on January 20, 2023, and his fabrication of, and attempt to fabricate, evidence supporting that criminal information, and based on Defendant Town of Cicero's continued prosecution of him thereafter; (2) a claim of negligence against Defendant Town of Cicero and Defendant Town of Cicero Police Department based on their failure to adequately hire, train, retain, and supervise officers (specifically Defendant Harrington), and on their decision to continue to prosecute the case against Plaintiff despite material deficiencies in that case; (3) a claim of false arrest against Defendant Harrington and Defendant Town of Cicero; and (4) a claim of municipal liability against Defendant Town of Cicero and Defendant Town of Cicero Police Department based on their deliberate indifference to their employees' violations of Plaintiff's constitutional rights.[1]

---

[1]       Although Plaintiff does not specify whether his claims of false arrest, malicious prosecution, and negligent training/supervision are meant to be asserted solely under New York State tort law or also under federal law (specifically, 42 U.S.C. § 1983), the Court liberally construes them as arising under both state and federal law. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (noting that the court should "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest"). Notably, in Plaintiff's negligence claim, he specifically alleges that Defendant Town of Cicero's policies regarding training and supervision have caused "constitutional right violations." (Dkt. No. 2, at ¶ 13.) Furthermore, in his *Monell* claim, he alleges that Defendant Town of Cicero's policies and customs enabled its agents or employees to act with deliberate indifference to his "constitutional rights." (*Id.* at ¶ 18.) Because there is a basis for those inferring the existence of those federal claims and because the existence of the federal versions of those claims may offer Plaintiff greater protection of his rights than their state tort counterparts (particularly in light of New York's notice of claim requirement for state law tort claims), the Court finds it appropriate to read those federal claims into the Complaint. *See McLeod*, 864 F.3d at 157 (reading NYSHRL and NYCHRL claims into the complaint where greater protections were available under those than the asserted federal law because there is an "understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of

(Dkt. No. 2.)  In support of these claims, Plaintiff requests, among other things, an award of

actual and punitive damages.  (*Id.*)  Finally, in addition to the claims enumerated in the

Complaint, Plaintiff's Complaint and opposition memorandum of law (to the extent it is

consistent with the allegations in his Complaint) assert claims of a violation of his right to a

speedy trial pursuant to the Sixth Amendment and 42 U.S.C. § 1983, and a violation of his due

process rights pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983.[2]

  **B.**  **Parties' Briefing on Defendants' Motion to Dismiss**

---

important rights because of their lack of legal training") (quoting *Abbas v. Dixon*, 480 F.3d 636,
639 [2d Cir. 2007]).

[2]  In inferring the assertion of a due process claim, the Court notes that Plaintiff's
allegations or arguments on the subject are related to Defendant Town of Cicero's failure to
obtain an acknowledgment of charges or discovery from the prosecutor's office.  For example,
these allegations or argument include the following: (1) that he was denied the opportunity to
prove his innocence "by the Town of Cicero failing to produce Discovery, and rejecting
numerous motions to dismiss on speedy trial and discovery laws" and could not file a notice of
claim sooner because of their "failure to turn over Discovery"; and (2) that "[t]he Town of
Cicero's willful and intentional failure to produce the court ordered Discovery or Certificate of
Compliance[] deprived my right to a speedy trial and violated my right to due process."  (Dkt.
No. 13, at 3-4; Dkt. No. 2, at ¶¶ 12, 15.)  Furthermore, although all of the allegations in the
Complaint supporting a due process claim are against Defendant Town of Cicero, Plaintiff also
alleged in the Complaint, in support of the malicious prosecution claim, that Defendant
Harrington "went above and beyond to create false information on a complaint that would be
likely to influence a Judge or Jury decision and forwarded the information to superiors and
Prosecutors."  (Dkt. No. 2, at ¶ 10.)  This language notably tracks one of the recognized methods
of asserting a due process claim based on a criminal defendant's right to a fair trial.  *See Frost v.
New York City Police Dept.*, 980 F.3d 231, 244 (2d Cir. 2020) (noting that the due process right
to a fair trial "is violated 'when a police officer creates false information likely to influence a
jury's decision and forwards that information to prosecutors'") (quoting *Ricciuti v. New York
City Transit Auth.*, 124 F.3d 123, 130 [2d Cir. 1997]). Because, as already discussed, the Court
must construe a *pro se* plaintiff's complaint to raise the strongest arguments it suggests, the
Court liberally construes the Complaint as asserting a due process claim against Defendant
Harrington based on his denial of Plaintiff's right to a fair trial caused by Harrington's alleged
creation and forwarding of false information, *McLeod*, 864 F.3d at 156, as well as a due process
claim against Defendant Town of Cicero based on its failure to turn over discovery.

### 1.    Defendants' Memorandum of Law

Generally, in their motion to dismiss, Defendants make six arguments.  (Dkt. No. 7, Attach. 5.)  First, Defendants argue that Plaintiff's Complaint should be dismissed against Defendant Town of Cicero Police Department because it is a department of the Town and thus not amenable to suit.  (*Id.* at 6.)

Second, Defendants argue that Plaintiff's malicious prosecution claim should be dismissed for the following reasons: (a) Plaintiff has not plausibly alleged the absence of probable cause because he has not provided any allegations about the nature of the "harassment" he was charged with, what information Defendant Harrington received from complaining witnesses, or the basis of the choice to arrest him, and the allegations that a judge issued a criminal summons creates a presumption of probable cause and Plaintiff has not alleged what any of the supposed "false information" manufactured by Defendant Harrington was; (b) Plaintiff has not plausibly alleged actual malice; (c) Plaintiff has not plausibly alleged that the prosecution against him was terminated in his favor because he states only that the charges were "dismissed," which does not plausibly suggest that the termination was "not inconsistent with [the] plaintiff's innocence" as required by New York law; and (d) as to Defendant Town of Cicero, Plaintiff has not plausibly alleged any conduct by the Town itself.  (*Id.* at 7-11.)

Third, Defendants argue that Plaintiff's false arrest claim should be dismissed because (a) he failed to serve a timely notice of claim and this claim is also barred by the applicable one-year statute of limitations, (b) he has failed to state a claim in that he has not alleged any facts regarding why Defendant Harrington's belief that he had committed a crime was not reasonable and has instead provided only conclusory allegations, (c) again, the judicial criminal summons

creates a presumption of probable cause and Plaintiff has not plausibly alleged that it was based on false information, and (d) as to Defendant Town of Cicero, Plaintiff has not plausibly alleged any conduct by the Town itself. (*Id.* at 11-14.)

Fourth, Defendants argue that Plaintiff's negligence claim should be dismissed because (a) he failed to serve a timely notice of claim, (b) his claim is time-barred by the applicable one-year-and-ninety-day statute of limitations, (c) he has not alleged that Defendant Harrington acted outside the scope of his employment, and has not shown any gross negligence on the part of Defendant Town of Cicero, (d) he has not alleged that Defendant Town of Cicero was aware in any respect that Defendant Harrington had a propensity to engage in the conduct alleged in the Complaint, (e) New York does not recognize any claim of negligent investigation or prosecution, and (f) he has not alleged that Defendants owe him any special duty. (*Id.* at 14-18.)

Fifth, Defendants argue that Plaintiff's municipal liability claim against Defendant Town of Cicero should be dismissed because (a) there is no alleged underlying constitutional violation, only state law tort claims, (b) even if the Court were to construe Plaintiff's false arrest and malicious prosecution claims as asserting concurrent claims under the Fourth Amendment, those claims should be dismissed for the same reasons as his state-law claims should be dismissed, (c) Plaintiff has not alleged the existence of any municipal policy, practice, or a pattern of conduct that would plausibly suggest a failure to train or discipline, and (d) Plaintiff has not alleged facts plausibly suggesting any causal link between any municipal policy and the injuries he allegedly suffered. (*Id.* at 18-21.)

Sixth, Defendants argue that Plaintiff's request for punitive damages should be dismissed because (a) punitive damages are prohibited against a municipality, and (b) the Complaint does

not include allegations that plausibly suggest a basis for such recovery against Defendant

Harrington.  (*Id.* at 21.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in response to Defendants' motion, Plaintiff makes seven arguments.  (Dkt.

No. 13.)  First, as a general matter, Plaintiff argues that his Complaint includes specific

allegations that are not conclusory and that are supported by evidence which he is not required to

produce at this time, including evidence such as body camera footage that is in the possession of

Defendants.  (*Id.* at 1.)

Second, with regard to Defendant Town of Cicero Police Department's amenability to

suit, Plaintiff argues that, although he agrees that Defendant Town of Cicero and Defendant

Town of Cicero Police Department are common entities, the Police Department should be

included in this claim, because the Police Department "operate[s] separately from the [T]own."

(*Id.* at 2.)

Third, with regard to his malicious prosecution claim, Plaintiff argues as follows: (a) it is

Defendants' obligation to prove that they had probable cause to arrest him, and mere assertions

of the existence of probable cause are not sufficient at this stage of the proceedings to merit

dismissal; (b) the Complaint clearly alleges that the evidence upon which Defendants

purportedly based his arrest was either fabricated by Defendant Harrington or non-existent; (c)

Defendants failed to provide discovery, including body camera footage, during the criminal

proceedings, a fact that shows they did not actually have probable cause to arrest him; (d) the

fact that a judge issued a warrant does not lead to finding of probable cause because Plaintiff has

alleged that Defendant Harrington fabricated evidence that was used to support that warrant and

attempted to fabricate a basis for additional charges; and (e) he was never given an opportunity to prove his innocence because the charges were dismissed when the District Attorney found it didn't "have a case."  (*Id.* at 2-3.)

Fourth, with regard to his false arrest claim, Plaintiff argues that his notice of claim was timely as to the relevant claims because his prosecution did not end until December 14, 2023, and therefore that is the day from which the limitations period should be measured.  (*Id.* at 3-4.) Plaintiff also argues that he was prevented from filing the notice of claim sooner because of Defendants' failure to submit discovery in the criminal action, and Defendants have not argued that they were substantially prejudiced by any delay in his submission of the notice of claim. (*Id.*)

Fifth, with regard to his negligence claim, Plaintiff argues that Defendant Town of Cicero was negligent because it was aware that Defendant Harrington had been previously suspended (in fact, he had just returned from a paid suspension a few days before the Plaintiff's arrest) for violations of police policies (including related to filing an improper or incomplete report), and it therefore had a duty to monitor him.  (*Id.* at 4.)  Plaintiff further argues that Defendant Town of Cicero's policy and actions represent a pattern of not adequately punishing officers who commit infractions.  (*Id.*)

Sixth, Plaintiff argues that Defendant Town of Cicero's "willful and intentional failure to produce the court ordered Discovery or Certificate of Compliance, deprived my right to a speedy trial and violated my right to due process."  (*Id.* at 4.)

Seventh, Plaintiff requests that, if the Court finds that his Complaint is not adequate to survive Defendants' motion to dismiss, he should be permitted to amend his Complaint. (*Id.* at 5.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendants make ten arguments. (Dkt. No. 19.) First, Defendants argue that Plaintiff has failed to state any cause of action because he has not included sufficient factual allegations to support his claims. (*Id.* at 3-4.) Specifically, Defendants argue as follows: (a) Plaintiff's reliance on body camera footage in Defendants' possession is inappropriate because that footage is not part of the Complaint and the Court may not consider evidence outside the Complaint on a motion to dismiss for failure to state a claim; (b) Plaintiff's assertion that discovery will provide him with evidence to support his claims is directly at odds with the plausibility standard that is applicable on the current motion; (c) the new allegations added by Plaintiff in his response, if the Court considers them, do not cure the defects in his Complaint; and (d) Plaintiff has also failed to respond to many of the arguments raised in Defendants' motion and has therefore waived any objections to those arguments. (*Id.*)

Second, Defendants reiterate their argument that the claims against Defendant Town of Cicero Police Department should be dismissed, adding that Plaintiff has not provided any legal authority supporting his assertion that they should remain in this action. (*Id.* at 5.)

Third, Defendants argue that Plaintiff's false arrest and negligence claims should be dismissed both because his failure to serve a timely notice of claim and because those claims are time-barred by the relevant statutes of limitations. (*Id.* at 5-6.) Specifically, Defendants argue that these claims did not accrue on December 14, 2023 (the date the criminal charges were

8

dismissed) as Plaintiff asserts, but rather on April 18, 2023 (the date he was arraigned on the criminal charges) as to the false arrest claim, and January 2 and 10, 2023 (the dates on which the allegedly negligent conduct occurred) as to the negligence claim;, but Plaintiff did not file the current action until April 29, 2024. (*Id.*) Further, to the extent that Plaintiff argues that the Court should excuse the failure to serve a timely notice of claim, Defendants argue that the Court may not entertain such a request. (*Id.*)

Fourth, Defendants argue that Plaintiff's malicious prosecution claim should be dismissed because (a) contrary to Plaintiff's assertion, it is his burden to prove the lack of probable cause as part of his claim, (b) even with the new allegations in the response, Plaintiff has not plausibly alleged that probable cause to prosecute him was lacking, (c) Plaintiff's argument that the criminal summons was based on false information is contradicted by his allegation that it was based on information Defendant Harrington received from the complaining witnesses, (d) Plaintiff has not alleged facts plausibly suggesting that Defendant Harrington attempted to fabricate additional charges, merely that he discussed with the witnesses what charges the facts would or would not support, and (e) he has not alleged facts sufficiently alleging that the prosecution ended in a favorable termination that was not inconsistent with innocence. (*Id.* at 6-8.)

Fifth, Defendants argue that, in the event it is not dismissed as untimely, Plaintiff's false arrest claim should be dismissed on the merits because (a) again, it is part of his burden to show an absence of probable cause, and (b) Plaintiff has not alleged facts plausibly suggesting that Defendants fabricated any evidence or charges. (*Id.* at 8-9.)

9

Sixth, Defendants argue that, in the event it is not dismissed as untimely, Plaintiff's negligence claim should be dismissed on the merits because Plaintiff's citation to the fact that Defendant Harrington has previously been suspended for violations of police department policies does not dispute the fact that Defendant Harrington was acting within the scope of his employment when the violation occurred, nor has he alleged that Defendant Harrington had any known propensity to specifically engage in conduct related to false arrest or malicious prosecution. (*Id.* at 9-10.)

Seventh, Defendants argue that Plaintiff's municipal claim should be dismissed, and that Plaintiff has not opposed their arguments on this matter. (*Id.* at 10.)

Eighth, Defendants argue that Plaintiff's request for punitive damages should be dismissed, and that Plaintiff has not opposed their arguments on this matter. (*Id.* at 10.)

Ninth, Defendants argue that Plaintiff has not properly asserted claims for denial of a speedy trial or a violation of his due process rights, but that, even if the Court accepts his attempt to do so in his opposition memorandum of law, he has nevertheless failed to state such causes of action. (*Id.* at 10-11.) Specifically, Defendants argue that Plaintiff's assertions related to a speedy trial are conclusory and unsupported by factual assertions, and that Plaintiff has not plausibly alleged that Defendant Harrington fabricated any evidence related to the due process claim. (*Id.*)

Tenth, Defendants argue that Plaintiff should not be permitted to amend his Complaint because nothing in his opposition memorandum of law indicates that he would be able to cure the relevant deficiencies, and, as a result, amendment would be futile. (*Id.* at 11-12.)

## II.    GOVERNING LEGAL STANDARD

10

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

11

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129

S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 560-61, 577.  Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim.  *Id*. at 555-70.  The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]."  *Id*. at 555.  More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a

13

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[3]

## III.    ANALYSIS

### A.    Whether Plaintiff's Claims Against Defendant Town of Cicero Police Department Should Be Dismissed

---

[3]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis.

It is well established in this district that "'a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located.'" *Bovee v. Auburn Police Dept.*, 24-CV-1138, 2024 WL 4600030, at *4 (N.D.N.Y. Oct. 29, 2024) (Katz, M.J.), report-recommendation adopted by 2024 WL 4834214 (N.D.N.Y. Nov. 20, 2024) (Hurd, J.) (quoting *White v. Syracuse Police Dept.*, 18-CV-1471, 2019 WL 981850, at *1 [N.D.N.Y. Jan. 7, 2019] [Peebles, M.J.], report-recommendation adopted by 2019 WL 974824 [N.D.N.Y. Feb. 28, 2019] [Suddaby, C.J.]); *see also Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.) ("A city police department is not an independent, suable entity separate from the municipality in which the police department is organized."); *Dotson v. City of Syracuse*, 04-CV-1388, 2006 WL 8453553, at *8 (N.D.N.Y. Mar. 21, 2006) (Mordue, C.J.) (finding that, because a police department "is an administrative arm of the municipal corporation," any claim against the police department was redundant where the City itself is already a party).

Here, Plaintiff has named the Town of Cicero as a party and all the claims he has asserted against the Town of Cicero Police Department can be asserted against the Town itself given that the Police Department is merely an administrative arm of the Town. Furthermore, he provides no factual allegations supporting his argument that the Police Department "operate[s] separately from the [T]own," or any authority finding that such allegations warrant a deviation from the

general rule set forth in the prior paragraph of this Decision and Order.  As a result, Defendant

Town of Cicero must be dismissed as a defendant from this action.

> **B.     Whether Plaintiff's State Law False Arrest and Negligence Claims Are Time-Barred**

After careful consideration, the Court answers the above question in the affirmative for

the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.B.1 and I.B.3 of this

Decision and Order.  To those reasons, the Court adds the following analysis.

Defendants argue that Plaintiff's false arrest and negligence claims should be dismissed

because he failed to file a timely notice of claim as to those claims.  Under New York law,

"'[t]imely service of a notice of claim is a condition precedent to a lawsuit sounding in tort

against a municipal entity.'"  *Ippoloto v. City of New York*, 230 A.D.3d 683, 683 (N.Y. App. Div.

2d Dept. 2024) (citations omitted).  New York General Municipal Law requires that the notice of

claim must be served within 90 days after the claim arises.  N.Y. Gen. Mun. L. § 50-e(1)(a).

Under the same statute, a plaintiff can apply to a court for leave to serve a late notice of claim,

"but the application must be made within the statute of limitations of one year and ninety days."

*Horton v. Schenectady Cnty.*, 21-CV-0983, 2024 WL 1655385, at *3 (N.D.N.Y. Apr. 17, 2024)

(Kahn, J.) (citing N.Y. Gen. Mun. L. § 50-e[5]).

As to Plaintiff's false arrest claim, Defendants argue that such claim accrued at the latest

by the date Plaintiff was arraigned, April 18, 2023.  (Dkt. No. 7, Attach. 5, at 11-12.)  Under

New York law, a false arrest claim accrues on the date a plaintiff is released from pre-trial

custody.  *See Jaime v. City of New York*, 41 N.Y.3d 531, 544 (N.Y. 2024) (noting that "Orozco's

false arrest and malicious prosecution claims did not accrue until the date he was released from

custody" in a situation where the date he was released from custody was also the same date the

prosecution against him ended); *Tanner v. Humphries*, 16-CV-1131, 2019 WL 981863, at *10 (N.D.N.Y. Jan. 3, 2019) (Suddaby C.J.) (noting that "a claim for false arrest accrues at the time of arraignment and release on bail"); *Hone v. City of Oneonta*, 157 A.D.3d 1030, 1032 (N.Y. App. Div. 3rd Dept. 2018) ("A cause of action for false arrest and imprisonment accrues when a party is released from confinement.").  Plaintiff's six-page, 27-paragraph Complaint has not alleged that he was held in custody at any time after his arraignment.  (*See generally* Dkt. No. 2.)  Rather, he alleges only that (a) he was charged with Harassment in the Second Degree, which is classified as a violation under New York law (N.Y. Pen. L. § 240.26), (b) he was arrested on March 26, 2023, and (c) he was arranged on April 18, 2023.  (*Id*. at 2-3, ¶¶ 7, 9, 16, 17.)  N.Y. Pen. L. § 240.26.  Based on these factual allegations (and the nature of the charge), the Complaint does not plausibly suggest that Plaintiff was held in custody at any time after he was arraigned.  As a result, Defendants are correct that Plaintiff's false arrest claim accrued at the latest on the date of his arraignment (April 18, 2023), and that Plaintiff's filing of the notice of claim on January 8, 2024, did not occur within the required 90-day period.

As to Plaintiff's negligence claim, Defendants argue that such claim accrues on the dates on which the alleged acts of negligence occurred.  (Dkt. No. 7, Attach. 5, at 15.)  Under New York law, a claim for negligent supervision/training/hiring accrues "on the date of the last alleged underlying act."  *Pichardo v. New York City Dept. of Educ.*, 99 A.D.3d 606, 607 (N.Y. App. Div. 1st Dept. 2012); *see also Breton v. City of New York*, 404 F. Supp. 3d 799, 809 (S.D.N.Y. 2019) ("Negligent hiring and supervision claims [under New York law] 'accrue from the date of the alleged torts.'").  As Defendants argue, the dates on which the relevant tortious conduct occurred were January 2, 2023 (when Defendant Harrington allegedly engaged in the

conduct that Plaintiff claims violated his rights and which could have been prevented with proper training and/or supervision) and January 10, 2023 (when Defendant Harrington's supervisor allegedly signed the prepared narrative about the circumstances under which Plaintiff was arrested without properly reviewing it in light of Defendant Harrington's previous unrelated suspension).[4]  (Dkt. No. 2, at ¶¶13-14.)  Because Plaintiff's negligence claim therefore accrued by January 10, 2023, his filing of the notice of claim on or about January 8, 2024, also did not occur within the required 90-day period.

Having found that Plaintiff failed to file a timely notice of claim as to either of these claims, the question is whether there is any basis for finding that Plaintiff should be granted leave to file a late notice of claim.  The longstanding view in this Circuit has been that, because N.Y. Mun. L. § 50-e states that "[a]ll applications under this section shall be made to the supreme court or to the county court," federal courts do not have jurisdiction to decide applications for leave to file a late notice of claim.  *See, e.g., Gomez-Kadawid v. Lee*, 20-CV-1786, 2023 WL 5020317, at *8 (S.D.N.Y. June 13, 2023); *Domni v. Cnty. of Nassau*, 19-CV-0083, 2020 WL 7625417, at *6 (E.D.N.Y. Dec. 21, 2020); *Tirse v. Gilbo*, 15-CV-0987, 2016 WL 4046780, at *20 (N.D.N.Y. July 27, 2016) (Suddaby, C.J.) (citing *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 [S.D.N.Y. 2011]).  As a result, to the extent that

---

[4]     The Court finds that, to the extent that Plaintiff has alleged that Defendant Town of Cicero also negligently prosecuted him, New York does not recognize a claim of negligent prosecution.  (Dkt. No. 2, at ¶ 15.)  *See Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 421 (N.D.N.Y. 2019) (McAvoy, J.) (stating that "there is no cause of action in the State of New York sounding in negligent prosecution or investigation"); *Bennett v. Brooklyn Crim. Ct.*, 16-CV-5111, 2016 WL 7494862, at *3 (E.D.N.Y. Dec. 29, 2016) (citing *Coleman v. Corporate Loss Prevention Assocs., Inc.*, 282 A.D.2d 703 [N.Y. App. Div. 2d Dept. 2001]).

Plaintiff's Complaint or opposition memorandum of law could be construed as containing an application for leave to serve a late notice of claim, this Court lacks the jurisdiction to consider any such application.

For the above-stated reasons, Plaintiff's state-law claims for false arrest and negligence must be dismissed based on the failure to serve a timely notice of claim as to those claims.

## C.    Whether Plaintiff Has Stated a False Arrest Claim Pursuant to 42 U.S.C. § 1983

After careful consideration, the Court answers the above question in the negative.[5]

"A § 1983 false arrest claim is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 329 (N.D.N.Y. 2021). "'To establish a claim under § 1983 for false arrest[,] a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.'" *LaFever*, 525 F. Supp. 3d at 329 (quoting *Jackson v. City of New York*, 939 F. Supp. 2d 235, 248 [E.D.N.Y. 2013]). "'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'" *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 [2d Cir. 1996]). "'Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and

---

[5]    The Court notes that, although Plaintiff also asserts a claim of false arrest against Defendant Town of Cicero because it allegedly arraigned him and issued a restraining order against him, the Court finds that such allegations more properly give riseto his claim for malicious prosecution.  (Dkt. No. 2, at 4.)

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jenkins*, 478 F.3d at 84 (quoting *Weyant*, 101 F.3d at 852).

Defendants argue that Plaintiff has not stated a claim for false arrest because he has failed to alleged facts plausibly suggesting that Defendant Harrington lacked probable cause to arrest Plaintiff. However, the Court need not reach the question of whether Plaintiff has alleged facts sufficient to plausibly suggest a lack of probable cause because, based upon the allegations in the Complaint and Plaintiff's opposition memorandum of law, Plaintiff has not alleged that he was arrested and subjected to a deprivation of liberty.

Plaintiff alleges that, in deciding to pursue charges against him related to the events of January 2, 2023, Defendant Harrington filed an information on January 20, 2023. (Dkt. No. 2, at ¶¶ 7-8.) However, Plaintiff does not allege that he was arrested either on January 2, 2023, or during the two months that followed the filing of the information on January 20, 2023. (*See generally* Dkt. No. 2.) Rather, Plaintiff alleges that a local "Judge signed [a] criminal summons against [him]" on March 15, 2023, that he was "[a]rrest[ed]" by Defendant Harrington on March 26, 2023 (upon Harrington's service of that summons), and that his arraignment was on April 18, 2023. (Dkt. No. 2, at ¶¶ 8, 16, 17.) However, he does not allege that any release from custody, or any other "arrest," ever occurred. (*See generally* Dkt. No. 2)[6]

_____

[6]     For example, the Court notes that Plaintiff does not allege that he failed to appear at the arraignment or any hearing thereafter and was subject to an arrest warrant as a result of such a failure. (*See generally* Dkt. No. 2.) Moreover, "[a]n appearance in a local criminal court, even when required pursuant to a criminal summons, does not amount to confinement that will support a false arrest claim." *Lacey v. Yates Cnty.*, 30 F. Supp. 3d 213, 225-26 (W.D.N.Y. 2014) (collecting cases); *see Mazzone v. Town of Southampton*, 283 F. Supp. 38, 56-57 (E.D.N.Y. 2017) (dismissing false arrest claim where the plaintiff was not arrested but rather issued an

With regard to the alleged "[a]rrest" on March 15, 2023, even when read with the utmost of special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting the occurrence on that date of an actual arrest (i.e., resulting from Defendant Harrington taking Plaintiff into custody) as opposed to a constructive arrest (i.e., resulting from Defendant Harrington's service of the summons upon Plaintiff). (*See generally* Dkt. No. 2.) Such a distinction is critical because the Second Circuit has held specifically that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *See Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (holding as such in the context of a Section 1983 claim against a canine control officer who issued a summons to appear in court at a later date related to a complaint about plaintiff's dog that would be classified as an infraction under Connecticut law); *cf. Wagner v. Hyra*, 518 F. Supp. 3d 613, 625 (N.D.N.Y. 2021) (Hurd, J.) (reaffirming in the context of a false arrest claim that "'issuance of an appearance ticket, in and of itself, does not constitute confinement,'" but noting that the plaintiff was subjected to more than merely an appearance ticket, including being told he was not free to leave and being handcuffed to a 'bull ring' on the wall in the police station before being given the appearance ticket and released from physical custody).

For all of these reasons, the Court finds that Plaintiff has failed to state a claim for false arrest pursuant to Section 1983.

### D.    Whether Plaintiff Has Stated a Claim for Malicious Prosecution

---

appearance ticket, noting as relevant also the fact that "there are no allegations that plaintiff was taken into physical custody or somehow unlawfully detained").

After careful consideration, the Court answers the above question in the affirmative as to Plaintiff's state-law claim, but in the negative as to any inferable claim pursuant to Section 1983 and the Fourth Amendment.

In order to plead a claim of malicious prosecution under both New York and federal law, a plaintiff must allege facts plausibly suggesting that (1) the defendant initiated or continued a criminal proceeding against the plaintiff, (2) there was a termination of the proceeding in the plaintiff's favor, (3) there was a lack of probable cause for commencing the proceeding, and (4) actual malice was a motivation for the defendant's actions. *See Sanders v. City of Saratoga Springs*, 691 F. Supp. 3d 548, 556 (N.D.N.Y. 2023) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 136 [2d Cir. 2003]).  "A § 1983 claim also requires 'a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'"  *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 237 (N.D.N.Y. 2023) (quoting *Buari v. City of New York*, 530 F. Supp. 3d 356, 383 [S.D.N.Y. 2021]).

There appears to be no dispute that Plaintiff has adequately alleged that Defendant Harrington initiated criminal proceedings against Plaintiff.  Defendants do however argue that Plaintiff has not plausibly alleged that those proceedings terminated in his favor.  "Under New York law, 'any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused.'"  *Sanders*, 691 F. Supp. 3d at 558 (quoting *Cantalino v. Danner*, 96 N.Y.2d 391, 395 [2001]).  Fundamentally, a dismissal of charges because of a lack of evidence of guilt or other similar reasons is not inconsistent with the

plaintiff's innocence. *See Sanders*, 691 F. Supp. 3d at 558 (finding dismissal because of lack of evidence of guilt and lack of harm caused was sufficient for a malicious prosecution claim).

To the extent the Court can construe a malicious prosecution claim pursuant to Section 1983 from Plaintiff's Complaint, the standard for alleging plausible termination is somewhat different.  As the Supreme Court has recently clarified, "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence," but rather, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

Although Defendants are correct that Plaintiff has alleged only that the charges were dismissed against him on December 14, 2023, without any other details regarding the reason for that dismissal, he elaborates on this allegation in his opposition memorandum of law, when he asserts that "[c]harges were dismissed in a favorable termination because the [District Attorney] stated they don't have a case."  (Dkt. No. 2, at 2; Dkt. No. 13, at 3.)  As previously discussed, because of his *pro se* status, the Court may read in his Complaint Plaintiff's further allegations presented in response to the motion to dismiss to the extent they are consistent with those presented in his Complaint.   Furthermore, he alleges multiple times in his Complaint that the criminal proceedings against him did not comply with his right to a speedy trial, although he does not specifically allege that a violation of his speedy trial rights was the reason the charges were dismissed.  (Dkt. No. 2, at 2-3.)  Because Plaintiff has alleged to some extent that the charges were dismissed because of a lack of merit or proof, the Court finds that he has sufficiently alleged that the proceedings terminated in his favor for the purposes of his state-law

23

claim.  Plaintiff has also plainly alleged facts meeting the requirement for favorable termination

for a Section 1983 claim as well because he has alleged that the criminal prosecution ended

without a conviction.

Defendants further argue that Plaintiff has failed to plausibly allege a lack of probable

cause for his prosecution.  "'Probable cause, in the context of malicious prosecution, has . . .

been described as such facts and circumstances as would lead a reasonably prudent person to

believe the plaintiff guilty.'"  *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) (quoting

*Boyd v. City of New York*, 336 F.3d 72, 76 [2d Cir. 2003]).

The Court finds that Plaintiff has alleged facts sufficient to plausibly suggest that

probable cause was lacking.  Specifically, Plaintiff alleges in the Complaint that Defendant

Harrington initiated the prosecution without any evidence to support the charge, "and went above

and beyond to create false information on a complaint that would be likely to influence a Judge

or Jury decision and forwarded the information to superiors and Prosecutors."  (Dkt. No. 2, at 2-

3.)  Defendant argues that these allegations are too conclusory, and that Plaintiff was required to

provide greater factual detail regarding the circumstances of the purported harassing conduct, the

information Defendant Harrington received from the witnesses at the scene, and the basis for the

decision to pursue prosecution.  (Dkt. No. 7, Attach. 5, at 8-9.)  This places too great a burden on

Plaintiff at this initial stage of the proceedings, one that is not imposed by Fed. R. Civ. P. 12.

Plaintiff was not required to allege all the details underlying his arrest and prosecution in order to

plausibly suggest that probable cause was lacking.  Here, his vaguer allegations that probable

cause was lacking and that there was "no evidence" are coupled with his allegation that

Defendant Harrington fabricated information to support the charge against him.  Taken together,

24

these allegations suggest at least minimally that Defendant Harrington did not have sufficient evidence to initiate criminal proceedings against Plaintiff without the allegedly fabricated evidence.

Moreover, to the extent that the allegations in the Complaint itself are somewhat lacking in detail, Plaintiff elaborates in his opposition memorandum of law that (a) the statement of one of the complaining witnesses that "[Plaintiff] is probably the one who drove here here [sic] to throw the screws" is not evidence that he committed the relevant action, (b) Defendant Harrington put in his report that "the defendant did commit the violation of harassment 2d when he did drive his wife" (a statement that Plaintiff alleges is not true or supported by evidence), and (c) Defendant Harrington "instructed to the complainants what to say in [their] statements to fabricate the narrative that he provided to them."  (Dkt. No. 13, at 2.)   Such additional allegations, which are not inconsistent with the allegations contained in the Complaint, are sufficient under the circumstances, as they provide some indication as to what information Plaintiff alleges was fabricated and how it impacted his arrest and prosecution.  The allegations that Defendant Harrington fabricated or caused to be fabricated the evidence underlying the charge plausibly suggest that the information upon which Defendant Harrington relied to support the prosecution would not lead a reasonably prudent person to believe Plaintiff was guilty.

The allegations that such false information was the basis of the arrest and prosecution also undermines Defendants' argument that the criminal summons issued by Justice Bruffett is sufficient by itself to show that probable cause was not lacking, because Defendants acknowledge that the applicable law holds that a presumption of probable cause exists on the basis of a finding by a neutral magistrate's issuance of an warrant only where the such warrant is

not based on misleading, false, or materially incomplete information.  (Dkt. No. 7, Attach. 5, at 9.)  *See Cea v. Ulster Cnty.*, 309 F. Supp. 2d 321, 329 (N.D.N.Y. 2004) (Scullin, C.J.) (noting that although "[t]he general rule is that 'an arrest pursuant to a valid warrant is presumptively made with probable cause,' . . . '[t]he presumption of probable cause can be rebutted only by a showing of fraud, perjury, or the misrepresentation or falsification of evidence'") (quoting *Martinetti v. Town of New Hartford Police Dept.*, 112 F. Supp. 2d 251, 252 [N.D.N.Y. 2000] [Hurd, J.]).[7]  As already discussed, Plaintiff has alleged (through his Complaint and his opposition memorandum of law) that Defendant Harrington fabricated information to support the harassment charge, particularly related to whether Plaintiff had driven to the relevant location with Ms. Downing (who evidently threw screws at the complaining witness or around the area). Because it has been plausibly suggested that the eventual judicially issued criminal summons was based on Defendant Harrington's allegedly false information, there is no basis to apply a presumption of probable cause at this time.

---

[7]      Absent Plaintiff's allegations of fabrication of evidence, Defendants' argument would have some appeal, because, in New York State, the issuance by a local criminal court of a summons is the equivalent of the issuance of an arrest warrant for the purpose of determining whether there was probable cause for the criminal proceeding.  *See Covert v. Westchester Cnty.*, 582 N.Y.S.2d 937, 939-40 (N.Y. Sup. Ct., Westchester Cnty. 1992) ("The interesting question posed to this Court is whether the issuance by the local criminal court of a summons in this case is the equivalent of the issuance of an arrest warrant for the purpose of determining whether there was an absence of probable cause for the criminal proceeding. . . .  The standards for [a local criminal court's] issuing the local criminal court summons were the very same standards which would have permitted it to issue a warrant for the arrest of the plaintiffs. . . .  In fact, . . . a criminal court summons is comparable to a warrant of arrest and its function is the same—that is, to compel the court appearance of a person against whom a formal charge has been filed.  Since the Information which was filed was sufficient on its face, it is clear that probable cause existed for the commencement of the criminal proceedings."), *aff'd*, 608 N.Y.S.2d 516 (N.Y. App. Div., 2d Dep't 1994).

Defendants also argue that Plaintiff has failed to plausibly allege that they acted with actual malice when initiating and continuing the prosecution against him. In order to prove actual malice, "the plaintiff must show that the defendant commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Sanders*, 691 F. Supp. 3d at 558 (internal quotation marks omitted). "Further, 'probable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted.'" *Id.* at 558-59 (quoting *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 761-62 [N.Y. 2016]). Here, Plaintiff's allegations, as discussed above, that Defendant Harrington fabricated evidence to support his arrest and prosecution plausibly suggests that Defendant Harrington acted with actual malice, as falsification of evidence to support a charge suggests a motive other than "the desire to see the ends of justice served," especially in light of the Court's finding that Plaintiff has sufficiently alleged a lack of probable cause. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (holding that, "[i]n most cases, the lack of probable cause–while not dispositive–tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause"); *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 239 (N.D.N.Y. 2023) (Hurd, J.) (noting that "'falsifying evidence is sufficient to show malice'" related to a malicious prosecution claim).

Based on the above, Plaintiff has therefore plausibly stated a claim for malicious prosecution under New York law. However, as to a Section 1983 malicious prosecution claim, Plaintiff has not alleged facts to plausibly suggest that he suffered a post-arraignment deprivation of liberty. The Second Circuit has held that "a post-arraignment defendant who is 'obligated to

27

appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (citing *Murphy v. Lynn*, 118 F.3d 938, 947 [2d Cir. 1997]; *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215-16 [2d Cir. 2000]; *Jocks v. Tavernier*, 316 F.3d 128, 136 [2d Cir. 2003]).  It noted that the fact of the commencement of the criminal action "put in motion proceedings that rendered the defendant at all times subject to the orders of the court, . . . and foreseeably required him to incur the expense of a lawyer and the inconvenience and perhaps expense of multiple court appearances." *Swartz*, 794 F.3d at 112.[8]

Plaintiff alleges that Defendant Harrington commenced the criminal action against him with the filing of an information on January 20, 2023, that criminal summons were signed on March 15, 2023, that he was arraigned on April 18, 2023, and that the case was dismissed in December 2023.  (Dkt. No. 2, at ¶ 8.)  He does not allege that he was required to attend, or did in fact attend, other hearings during the period between his arraignment on April 18, 2023, and when his charges were dismissed in December 2023.  *See MacPherson v. Town of Southampton*, 07-CV-3497, 2023 WL 6058202, at \*5-6 (E.D.N.Y. Nov. 14, 2013) (applying *Swartz* and finding that plaintiff failed to allege a post-arraignment seizure because the "Amended Complaint is bereft of allegations that MacPherson was required to appear in court after his arraignment or that he did in fact appear in court after his arraignment as a result of the criminal charges"); *see*

---

[8]    The Second Circuit's earlier decision in *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110 (2d Cir. 1995), appears to suggest that something more than being subjected to ongoing criminal proceedings is required to allege deprivation of a liberty interest for a Section 1983 malicious prosecution claim.  *See Singer*, 63 F.3d at 116-17 (discussing the absence of restriction on the plaintiff's ability to travel freely or evidence that he was required to post bail).  However, the Second Circuit did not actually reach the issue of whether the plaintiff suffered a deprivation of his liberty interest or whether a seizure occurred in that case.  *Id.* at 17.

*also Franco v. Gunsalus*, 22-71, 22-339, 2023 WL 3590102, at *4 (2d Cir. May 23, 2023) (finding liberty restriction based on the fact that the plaintiff had been required to "continually return[] to court on a monthly basis before the case was over"). There are also no allegations to suggest that Plaintiff was foreseeably required to incur the expense of a lawyer related to the charge, or that he did so. Further, to the extent such facts are relevant, he does not allege that he was placed into physical custody at any time following the events of January 2, 2023, either before or after his arraignment. Nor does he allege that he was subjected to any other restrictions following either the issuance of the criminal summons or his arraignment, such as on his ability to travel freely. Given that Plaintiff has not alleged that he was restricted in any manner beyond being required to attend the arraignment, he has not alleged a sufficiently unreasonable deprivation of his liberty to state a claim for malicious prosecution pursuant to Section 1983.

Based on the above, the Court denies Defendants' motion to dismiss Plaintiff's state-law claim for malicious prosecution against Defendant Harrington, but grants that motion as to any such claim pursuant to 42 U.S.C. § 1983.

### E.    Whether Plaintiff Has Stated a Claim Against Defendant Harrington for a Due Process Violation

After careful consideration, the Court answers this question in the affirmative for the following reasons.

As discussed above, the Court finds that Plaintiff has asserted a claim that Defendant Harrington violated his due process rights under the Fourteenth Amendment by creating false information against him and forwarding such information to the prosecutor related to the charge of harassment. "This right is violated '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" *Frost*, 980 F.3d at

29

244 (quoting *Ricciuti*, 124 F.3d at 130).  As the Second Circuit has stated, "'[t]o succeed on a fabricated evidence claim [pursuant to the Fourteenth Amendment], a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result.."[9] *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (quoting *Ashley v. City of New York*, 992 F.3d 128, 139 [2d Cir. 2021]).  "[U]nlike a malicious prosecution claim, 'a Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the Section 1983 plaintiff.'"  *Frost*, 980 F.3d at 244 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277-78 [2d Cir. 2016]).  Moreover, "a criminal defendant's right to a fair trial protects more than just the fairness of the trial itself," and can stand even where the proceedings never get to trial.  *See Frost*, 980 F.3d at 249.

As discussed above related to his malicious prosecution claim, Plaintiff has alleged facts related to the fabrication of evidence that are more than just conclusory.  *See Barnes*, 68 F.4th at 129 (finding plaintiff had pled fair trial claim where his allegations were more than just bare assertions that were merely a formulaic recitation of the elements of that claim).  Specifically, he has alleged that Defendant Harrington falsified evidence, including stating in his report that

---

[9]    There is also a requirement that the criminal proceedings terminated in the plaintiff's favor.  *See Small v. Collins*, 10 F.4th 117, 136 (2d Cir. 2021) ("To bring a fabricated-evidence claim, a plaintiff must therefore establish – as a condition precedent to suit – that the claim has accrued within the meaning of *McDonough* [*v. Smith*, 588 U.S. 109 (2019)].")  "Where a plaintiff asserts a section 1983 fair-trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an ongoing prosecution or outstanding conviction."  *Smalls*, 10 F.4th at 139 (emphasis omitted).  Because this lawsuit does not affect an ongoing prosecution or outstanding conviction, Plaintiff has met this requirement.

Plaintiff drove his wife to the scene of the incident (an element that he appears to imply is relevant to the harassment charge), and instructing the complaining witnesses about what to say in their statements in order to fabricate the narrative.  (Dkt. No. 13, at 2-3.)  He also alleges that Defendant Harrington provided that false information to both his supervisor and the prosecutors, most notably by filing the information that initiated the proceedings against Plaintiff.  (Dkt. No. 2, at ¶ 8, 10.)  Moreover, the sparse details Plaintiff has provided, along with his other allegations, plausibly suggest for the purposes of this motion that the false information could be likely to influence a jury's verdict, as Plaintiff alleges there is little evidence related to the incident other than the complaining witnesses' statements that Defendant Harrington allegedly fabricated.  (*See* Dkt. No. 13, at 3 ["But complainants clearly said they have no evidence, no personal account, no video, no photos."].)  The pertinent question is therefore whether Plaintiff was deprived of an interest in life, liberty, or property according to the standards of the Fourteenth Amendment.

In assessing this issue, the Second Circuit recently emphasized that the standard applicable to Fourteenth Amendment claims for denial of the right to a fair trial differs from that which is applicable to Fourth Amendment malicious prosecution claims.  *Barnes*, 68 F.4th at 129.  In the Fourteenth Amendment fabricated-evidence context, the Second Circuit has "previously recognized that a plaintiff's 'prosecution' can be a 'deprivation of liberty.'"  *Id.* (quoting *Ashley*, 992 F.3d at 139).  Indeed, "[t]he use of fabricated evidence in initiating a prosecution or at trial may amount to a deprivation of liberty even in the absence of a conviction based on the fabricated evidence."  *Barnes*, 68 F.4th at 129-30.  This is because prosecution implicates certain non-custodial deprivations of liberty, because it "damages an individual's

31

reputation, requires that individual to mount a defense, and places him in the power of a court of law." *Garnett*, 838 F.3d at 279; *Barnes*, 68 F.4th at 130.

The Court finds that, for the purposes of this motion, Plaintiff's allegations plausibly suggest he suffered a deprivation of liberty under the Fourteenth Amendment standard, which the Second Circuit has suggested is quite broad where a prosecution has been initiated.  As a result, Defendants' motion is denied as to Plaintiff's due process claim against Defendant Harrington.

F.    **Whether Plaintiff Has Stated a Claim for Municipal Liability**

After careful consideration, the Court answers the above question in the affirmative as to Plaintiff's allegations that Defendant Town of Cicero failed to adequately supervise or train Defendant Harrington as to the fabrication-of-evidence claim, but in the negative as to the other allegations and claims for the following reasons.

Plaintiff acknowledges in his Complaint that Defendant Town of Cicero is a municipality.  (Dkt. No. 2, at ¶ 2.)  Because it is a municipality, Plaintiff's various federal claims against it for false arrest, malicious prosecution, "negligence,"[10] denial of a right to a speedy trial, and denial of due process are more appropriately analyzed under the *Monell* framework. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom,

---

[10]    Based on Plaintiff's factual allegations, the Court liberally construes this federal claim for "negligence" as asserted against Defendant Town of Cicero as a failure to adequately supervise or train.

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

"[I]n order to set forth a cognizable claim for municipal liability under Section 1983, a

plaintiff must plead and prove that a deprivation of his constitutional rights 'was caused by a

governmental custom, policy, or usage of the municipality.'" *MacLaren v. Chenango Cnty.*

*Police*, 24-CV-0922, 2024 WL 4728884, at *5 (N.D.N.Y. Nov. 8, 2024) (Katz, M.J.) (quoting

*Jones v. Town of East Haven*, 691 F.3d 72, 80 [2d Cir. 2012]).  A policy, custom, or usage can be

shown in four ways: (1) there is a formal policy officially endorsed by the municipality; (2) the

actions that caused the deprivation in question were taken by government officials responsible

for establishing the relevant municipal policy related to such actions; (3) the deprivation

occurred because of a practice that is so consistent and widespread that it constitutes a custom or

usage of which a supervising policy-maker must have been aware; or (4) there was a failure by

policy-makers to provide adequate training or supervision that amounts to deliberate indifference

to the rights of those who come in contact with municipal employees.  *Lalonde v. City of*

*Ogdensburg*, 662 F. Supp. 3d 289, 315 (N.D.N.Y. 2023) (Kahn, J.).  Liability cannot be based on

a theory of *respondeat superior*, and can lie only where the municipality is the "moving force"

behind the violation of the plaintiff's constitutional rights.  *Pembaur v. City of Cincinnati*, 475

U.S. 469, 480 (1986); *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S.

397, 400 (1997).

The only tangible municipal policy or custom that can be gleaned from Plaintiff's

Complaint is the failure to train, supervise, and discipline Defendant Harrington.  Specifically, as

to the failure to train or supervise, Plaintiff has alleged that (a) Defendant Harrington lacked

proper training and experience, (b) Defendant Harrington falsified information in the course of his investigation and the writing of his report related to the events leading to the charge against Plaintiff, (c) the falsification of that information caused a violation of Plaintiff's constitutional rights, and (d) that Defendant Harrington's supervisor, Sergeant Leo, "signed [Defendant Harrington's] Narrative without properly examining the evidence being forwarded to prosecutors against the Plaintiff, knowing that just a couple of days prior, [Defendant] Harrington just returned from a 10 day "PAID" suspension for violating several police policy's [sic], and filing a false or incomplete report."  (Dkt. No. 2.)

The Second Circuit has formulated three requirements to state a claim against a municipality for failure to adequately train or supervise its employees in a manner that constitutes deliberate indifference to constitutional rights: (1) "the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation," such that deliberate indifference cannot be found where the municipality failed to train its employees for rare or unforeseen events; (2) "the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training and supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Lalonde*, 662 F. Supp. 3d at 315-16 (quoting *Walker v. City of New York*, 974 F.2d 293, 297 [2d Cir. 1992]).

Plaintiff has stated a claim that Defendant Town of Cicero failed to adequately supervise or train Defendant Harrington.  There is no doubt that Defendant Town of Cicero would know that officers of its police department would face situations in which they are expected to conduct

investigations, collect information about events, and create reports based on those activities and that officers could adduce and record false information in such situations, and thus Defendant Harrington's alleged conduct is not a rare or unforeseen event.  Moreover, whether or not to falsify information in the course of an investigation is the sort of choice that can be made less difficult with training or supervision, and Plaintiff has alleged that Defendant Harrington had himself been recently suspended for violating policies including "filing a false or incomplete report," substantiating that there was at least some history suggesting a potential need for training.  Lastly, there is no doubt that falsification of information that leads to charges and prosecution will frequently lead to violations of individuals' constitutional rights.  As a result, Plaintiff has alleged a failure to train under circumstances that plausibly suggests deliberate indifference.

However, this finding does not end the analysis.  As the Second Circuit has stated,

> [u]nless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.  *Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from the policy.  Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff.

*Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (citing *Segal v. City of New York*, 459 F.3d 207, 219 [2d Cir. 2006]).

Here, Plaintiff's claims for false arrest and malicious prosecution, to the extent the Court has interpreted those as being also asserted as federal claims, have been dismissed for failure to state a claim, and thus cannot serve as the constitutional violation for a *Monell* claim.  Further, as

to Plaintiff's speedy trial claim and due process claim based on the alleged failure of agents of

Defendant Town of Cicero to produce relevant discovery during the criminal proceeding,

Plaintiff has not alleged facts that would plausibly suggest that a failure to train or supervise

Defendant Harrington was the cause of the constitutional injury Plaintiff allegedly suffered

related to those claims; based on Plaintiff's allegations, neither of these claims depend on

Defendant Harrington's alleged falsification of evidence, yet he has alleged no policy or custom

related to how Defendant Town of Cicero's other relevant employees conduct prosecutions that

resulted in the alleged speedy trial and failure-to-produce-evidence due process claims.[11]  As a

result, none of these claims constitute a basis for municipal liability.

Plaintiff has, however, adequately stated a due process claim based on the fabrication of

evidence, as discussed above, and that claim is premised on Defendant Harrington's alleged

falsification of evidence to support the harassment charge.  As a result, the Court finds that

Plaintiff has stated a claim for municipal liability against Defendant Town of Cicero specifically,

and only, as to the fabrication-of-evidence claim based on a failure to train.  *See Askins*, 727 F.3d

at 253 (noting that a plaintiff need not obtain a judgment against individual tortfeasors, but must

only plead and prove that the federal constitutional tort was committed and was a result of

municipal custom or policy in order to succeed on a *Monell* claim).

 Finally, the Complaint can also be construed to allege a failure to discipline.  Plaintiff

alleges that Defendant Town of Cicero, through its police department, has a policy of applying

"a lesser standard of fault when prosecuting," because it prefers "to Punish their officers

---

[11]    These two claims are asserted only against Defendant Town of Cicero, and thus, having found that Plaintiff has not alleged a policy or custom, there is no need to assess the underlying merits of those claims.

including Officer Harrington by allowing them to use paid vacation days, instead of an actual suspension." (Dkt. No. 2, at ¶¶ 13-14; Dkt. No. 13, at 4.)  However, Plaintiff has not included any allegations regarding how a policy of allowing officers to expend their paid vacation time during periods when they are out on a disciplinary suspension in any way caused a violation of his constitutional rights.  Thus, even if that does represent a policy of Defendant Town of Cicero, Plaintiff has not plausibly alleged that this policy is relevant to any of his asserted claims. Further, Plaintiff has not included any allegations to plausibly suggest that Defendant Town of Cicero should have known that allowing the use of paid vacation time during a suspension period would be likely to result in an officer engaging in improper behavior once they returned, much less that it acted with deliberate indifference to any such knowledge.   As such, this aspect of Plaintiff's municipal liability claim must be dismissed.

For all of the above reasons, the Court denies Defendants' motion on this claim as to the alleged failure to supervise and train Harrington related to the fabrication of evidence, but grants it as to the other alleged bases for municipal liability.

### G.    Whether Plaintiff's Request for Punitive Damages Should Be Dismissed

After careful consideration, the Court answers the above question in the affirmative as to Defendant Town of Cicero, but in the negative as to Defendant Harrington for the following reasons.

Plaintiff's request for punitive damages against Defendant Town of Cicero must be dismissed because 42 U.S.C. § 1983 does not permit for the recovery of punitive damages against a municipality.  *See Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 103 (2d Cir. 2024) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 [1981]).

However, the Court declines to dismiss Plaintiff's request for punitive damages against Defendant Harrington at this time.  "To obtain punitive damages in ordinary tort actions, a New York plaintiff not only must show that the defendant committed a tort, but also must demonstrate the existence of 'circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton.'"  *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) (quoting *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 479 [N.Y. 1993]).  Similarly, the standard in actions pursuant to 42 U.S.C. § 1983 allows punitive damages where the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Because Plaintiff has plausibly alleged that Defendant Harrington created false evidence in order to initiate and continue a baseless prosecution against him, the Court finds that it would be inappropriate to dismiss Plaintiff's request for punitive damages on this motion to dismiss.  *See Rizk v. Mehirdel*, 14-CV-6434, 2022 WL 5184709, at *7 (E.D.N.Y. Oct. 5, 2022) (upholding the punitive damages finding where the court concluded that "the jury was entitled to account for Defendants' 'fabricated evidence' and/or 'false accounts' of Plaintiffs' arrest when deciding the punitive damages award").

Based on the above, the Court dismisses Plaintiff's request for punitive damages against Defendant Town of Cicero, but that request survives as against Defendant Harrington.

### H.    Whether Plaintiff Should Be Permitted to Amend His Complaint

After careful consideration, the Court answers this question in the negative at this time for the following reasons.

"A court should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Trisvan v. New Sch. Ctr. for Media*, 24-CV-0755, 2024 WL 5119208, at *3 (N.D.N.Y. Nov. 5, 2024) (Stewart, M.J.), report-recommendation adopted by 2024 WL 5205984 (N.D.N.Y. Dec. 23, 2024) (D'Agostino, J.) (quoting *Bruce v. Tompkins Cnty. Dept. of Soc. Servs. ex rel Kephart*, 14-CV-0941, 2015 WL 151029, at *4 [N.D.N.Y. Jan. 7, 2015] [Suddaby, J., Peebles, M.J.]) (internal alterations and quotation marks omitted).

Here, Plaintiff's Complaint has not been dismissed; multiple of his claims survive Defendants' motion, as discussed above. The Court therefore denies without prejudice the request in Plaintiff's memorandum of law to amend his Complaint as to any of the claims that have been dismissed in this Decision and Order because he has not provided additional allegations that would lead this Court to believe he can state plausible versions of those claims. That being said, should Plaintiff believe he can correct any of the above-identified deficiencies now that the Court's reasoning has been presented to him, he is permitted to file a timely motion to amend his Complaint in compliance with Fed. R. Civ. P. 15 and N.D.N.Y. Local Rule 15.1(a).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 7) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

**ORDERED** that Plaintiff's claims pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution are **<u>DISMISSED</u>** with leave to amend in this action upon the filing of a successful motion to amend and it is further

**ORDERED** that Plaintiff's claims pursuant to New York law for false arrest and negligence are **DISMISSED** with leave to amend in this action upon the filing of a successful motion to amend; and it is further

**ORDERED** that Plaintiff's request for punitive damages against Defendant Town of Cicero are **DISMISSED** with leave to amend in this action upon the filing of a successful motion to amend; and it is further

**ORDERED** that Plaintiff's claim pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 for a due process violation based on fabrication of evidence, his claim pursuant to 42 U.S.C. § 1983 for municipal liability specifically regarding failure to supervise or train related to the fabrication of evidence, his claim pursuant to New York law for malicious prosecution against Defendant Harrington, and his claim for punitive damages against Defendant Harrington **SURVIVE** Defendants' motion to dismiss.

Dated: February 27, 2025
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge